George R. Bringhurst et al v. The Texas Company et al.

Decided May 23, 1905.

1.—Statute of Frauds—Parol Sale of Land.

The requisites necessary to take a parol sale of land out of the operation of the statute of frauds are: (1) The minds of the parties must have met in an oral agreement to sell; (2) The purchase money must have been paid and possession delivered by the vendor to the vendee; (3) On the faith of the transaction the vendee must have made valuable improvements upon the property.

2.—Same—Construction of Statute.

While the statute declares in effect that no real estate shall be conveyed except by an instrument in writing (Rev.. Stats., art. 624), yet as limited by construction there are other means of conveyance recognized by the courts as lawful and so enforced, and hence the statute does not have the effect of precluding an inference from appropriate facts that a conveyance may have been made by parol agreement, consummated by performance.

3.—Same—Evidence of Both Parol and Written Sale.

Nor does the fact that there ,was evidence of a written agreement to sell land preclude the jury, when such evidence is discredited and is not believed by them, from finding, upon further evidence sufficient to so establish, that there was in fact a parol agreement to sell preceding the alleged written agreement, but never carried into a written agreement, and that such parol agreement was consummated by part performance.

4.—Same—Estoppel—Purchaser of Conflicting Claims.

In this State parol sales of realty are upheld on the theory of estoppel, and one who purchases conflicting claims may avail himself of the defense against any one of his vendors against whom it may be appropriate under the facts.

5.—Same—Improvements in Reliance on Parol Purchase.

Where W. bought up conflicting claims to a tract of land, one of the purchases being by parol, and in reliance on the title as procured from all the sources made valuable improvements which he would not have made in the absence of the parol purchase, this was sufficient to consummate the parol sale, although he did not rely on it exclusively in making the improvements.

6.—Same—Limiting Improvements to Specific Part.

The effect of the improvements as consummating the parol purchase, which was of the entire tract, held under the facts not limited to a specific 200 acres on which they were placed by reason of the separate purchase of such 200 acres from one of the adverse claimants.

7.—Limitations—Record—Possession to Boundary Limits.

The enactment of article 3344, Revised Statutes, providing that possession under a written memorandum of title other than a deed will extend to the boundaries specified in the instrument, if it be duly registered, does not, it seems, abrogate the rule as to deeds so as to require that the deed must be registered in order for possession under it to have such effect. Doom v. Taylor, 35 Texas Civ. App., 251, and Watts v. Bruce, 31 Texas Civ. App., 258, questioned and not followed.

Appeal from the District Court of Hardin. Tried below before Hon. L. B. Hightower.

*John L. Little, McLean & Gordon, Heeley, McBride & Watson* and *W. H. Lipscomb,* for appellants.—1. The jury was not authorized sole-

ly from the circumstances in evidence to draw a legal inference or deduction of parol or verbal sale; nor to infer as a legal deduction a parol sale from Minter to Willis in spite of the direct evidence of Willis that the sale was in writing signed by the seller and delivered to the purchaser and that no other transaction took place between them at any time. The jury was not authorized from the circumstances in evidence to disregard any particular sale, written or verbal, and presume, as an inference of law, that somewhere, sometime and somehow the title passed from Minter to Willis. Lawson on Presumptive Ev., rules 16, 86; Rogers v. Wallace, 28 S. W. Rep., 246; Williams v. Morris, 95 U. S., 444; Jones v. Rens, 24 S. W. Rep., 675; Railway v. Porter, 73 Texas, 307; United States v. Ross, 92 U. S., 285; Joske v. Irvine, 91 Texas, 581; Kocher v. Mayberry, 29 S. W. Rep., 604; Patton v. Tucker, 29 Texas, 402; Lincoln v. French, 105 U. S., 619; Herndon v. Vick, 89 Texas, 475.

2. A verbal sale of land is void and can not be enforced in the absence of evidence that the purchaser relied thereon and paid the purchase money, took possession and made permanent and valuable improvements in pursuance thereof. Purcell v. Minor, 4 Wall., 513; Williams v. Minor, 95 U. S., 444; Ducie v. Ford, 138 U. S., 595; Munk v. Wiedner, 29 S. W. Rep., 409; 1 Story Eq. Jur., 763; Brackin v. Hambrick, 25 Texas, 412.

3. A verbal sale of land is void and can not be enforced in the absence of proof showing that the possession and improvements are solely referable to the parol contract. Wooldridge v. Hancock, 70 Texas, 21; Hendricks v. Snedlieker, 30 Texas, 307; Murphy v. Snell, 43 Texas, 123; Westmoreland v. Carson, 76 Texas, 623; Lodge v. Leverton, 42 Texas, 33; Bondis v. Ivy, 31 S. W. Rep., 244; Ryan v. Wilson, 56 Texas, 36; Thomas v. Hammond, 47 Texas, 42; Pomeroy Eq. Jur., sec. 1409; Wallace v. Brown, 10 N. J. Eq., 308.

4. In no event could the assumed verbal sale avail the appellees beyond the segregated 200 acre survey upon which the improvements were placed. Hill v. Harris, 64 S. W. Rep., 820; Turner v. Moore, 81 Texas, 206; Montgomery v. Gunther, 81 Texas, 320; Morton v. Collins, 20 S. W. Rep., 1115.

5. There being no written memorandum of the title duly registered for ten consecutive years, and no actual possession beyond the amount allowed a naked trespasser, there was no issue of title under the plea of ten years limitation by constructive possession. Rev. Stats., art. 3344; Doom v. Taylor, 79 S. W. Rep., 1086; Watts v. Bruce, 72 S. W. Rep., 258; Hodges v. Robbins, 56 S. W. Rep., 565; Nataval v. Raymond, 59 S. W. Rep., 311; Hardy v. Dunlap, 26 S. W. Rep., 852; Craig v. Cartwright, 65 Texas, 413; Runnels v. Belden, 51 Texas, 50; Ellis Co. v. Thompson, 66 Texas, 48; Russell v. Farpuar, 55 Texas, 355; Am. & Eng. Enc. L. pp. 678-680.

*James L. Autrey, Hutcheson, Campbell & Hutcheson, Spotts & Matthews, W. L. Thompson, Taliaferro, Nalle & Dies, Denman, Franklin & McGown,* for appellees.—1. Any fact may be established by circumstances and therefore a sale of land may be established by circumstances whether the sale be in writing or not. Fletcher v. Fuller, 120 U. S.,

534; Grayson v. Lafland, 52 S. W. Rep., 123; Bounds v. Little, 75 Texas, 316; Jones v. Reus, 24 S. W. Rep., 675; Dunn v. Eaton (Tenn.), 23 S. W. Rep., 163; Smith v. Swann, 2 Texas Civ. App., 563; Baldwin v. Roberts, 36 S. W. Rep., 789.

2. A verbal sale of land followed by possession and improvements vests title in the vendee. Harrold v. Sumner, 78 Texas, 582; Wells v. Davis, 77 Texas, 638; Worvelle on Vendors (2d ed.), sec. 86; Cauble v. Worsham, 96 Texas, 92.

3. The jury could accept part and reject part of Willis's testimony or the testimony of any other witness. G., H. & S. A. Ry. Co. v. Jackson, 93 Texas, 263; Paxton v. Boyce, 1 Texas, 317; Burkhalter v. Edwards, 60 Am. Dec., 744; and note on pages 749-752; 3 Jones on Evidence, secs. 860, 861, and authorities cited; Choate v. Railway, 90 Texas, 88.

4. Where a tenant in common owns an undivided interest in a large tract and resides thereon with his family, his homestead interest is not limited to the two hundred acres of said tract around his residence, but is two hundred acres to be taken out of his undivided interest in the entire tract in the partition. Luhn v. Stone, 65 Texas, 441; Swearengen v. Bassett, 65 Texas, 267; Gillim v. Null, 58 Texas, 304.

5. The evidence tended to show that the possession and improvements made by Willis were referable solely to the parol contract between him and Minter and even if it did not tend to show that it was referable to that contract alone, but that it was referable partly to that contract and partly to the other titles claimed by Willis at the time he purchased from Minter, still the jury might find that the sale was a bar to appellants' recovery.

6. Under the statutes of limitation of three years and under the statutes of limitation of ten years, before the Revised Statutes, notice of the extent of one's claim by the recording of instruments, etc., was not an element, and the only notice contemplated to the true owner was derivable solely through such inquiry as he might make of the person in possession as to the extent of his claim; but before and since the Revised Statutes an additional notice was required under the five years' statute, to wit: The recording of the deed under which the possessor claimed; and since the Revised Statutes notice by recording of the instrument under which the possessor claims is made an element by virtue of the statutes only in one case, to wit, where the claim is under a written memorandum of title other than (of less dignity than) a deed, it being required that such memorandum shall be duly registered. Craig v. Cartwright, 64 Texas, 413; Cole v. Grigsby, 89 Texas, 229; Grigsby v. May, 84 Texas, 41.

GILL, Associate Justice.—This suit was brought by George R. Bringhurst and his coplaintiffs in the form of an action of trespass to try title to recover of the Texas Company, a corporation, 842 acres of land out of the Stephen Jackson league in Hardin County, Texas. The property in controversy is known as the Sour Lake tract on which is situated the Sour Lake health resort and it is now part of the Sour Lake oil field.

The defendants pleaded not guilty and limitation of three, five and ten years. Of the issues submitted to the jury they decided but one,

and found for defendant on the theory that its predecessor in title had acquired the land by parol sale. From a judgment upon that verdict plaintiffs have appealed.

The history of the title as disclosed by the record may be stated in a general way as follows: The league which comprises the land in controversy was granted by the Mexican Government to Stephen Jackson in 1835. Jackson, the original grantee, conveyed 1,000 acres thereof by metes and bounds to Holland, Freeman and Sears for a consideration of $6,000. The 1,000 acres thus conveyed embraced the land in controversy in this suit. By the year 1856 W. C. Lacy had become the owner of the entire tract, his title being connected by mesne conveyances with that of Holland, Freeman and Sears. One of the intervening owners of an undivided interest was Gilbert Lacour who with his wife at one time resided on the property. Lacy conveyed a 22 acre tract to one John Ritchie. This left 978 acres out of the 1,000 acre tract, and this Lacy sold and conveyed to W. R. Smith in 1859. In March, 1859, W. R. Smith sold and reconveyed to Lacy an undivided half interest in the tract for a recited consideration of $11,000 paid, leased the remaining half to Lacy for $2,000 per year and retained a lien on Lacy's interest to secure the payment of the rent. Lacy and his wife resided on the property and he died in 1860, leaving his wife, Eliza, surviving him. He also left a daughter, Mrs. E. Stone. In April, 1862, the administrator of the estate of W. C. Lacy, deceased, duly sold and conveyed Lacy's undivided interest in the Sour Lake property to John Clements. The consideration was $15,500. In the same month W. R. Smith released his mortgage securing the rent. In August, 1862, Clements in consideration of $21,500 paid, sold and conveyed his half interest to A. M. Gentry by warranty deed, and on the same day W. R. Smith sold to Gentry and conveyed by warranty deed his half interest, the consideration being $20,000, due October 1, 1873. There was no express reservation of the lien in the deed, but the terms of the sale were recited. Gentry thus became the sole owner, subject to the implied lien to secure the payment of the purchase money of Smith's interest. On October 14, 1862, Gentry for a paid consideration of $9,000 conveyed to J. N. Reed an undivided two-fifths of the tract. About the same date he sold to Sophia Trube, A. J. Chavanne and George H. Bringhurst one-fifth each, the consideration from each being $4,500 paid, and each of these four deeds contained a recital that the vendee took his interest subject to Smith's lien for unpaid purchase money. Thus Gentry ceased to be an owner.

Mrs. Trube, in May, 1870, sold and conveyed her one-fifth to J. N. Reed, and Chavanne having died, his administrator in 1868 conveyed his one-fifth to H. G. Pannell and George H. Bringhurst. The land thus became the property of Reed to the extent of an undivided three-fifths and Pannell and Bringhurst as to the remaining two-fifths.

In March, 1870, Mrs. Eliza C. Lacy, the widow of W. C. Lacy, brought suit to enforce a 200 acre homestead claim in the land on the ground that she and her husband had occupied it as a home during his ownership of an undivided half interest, and that such homestead interest did not pass by the administrator's deed. She joined as defendants John Clements, H. G. Pannell, George H. Bringhurst, Sophia

Trube and J. N. Reed. In 1871 W. R. Smith made himself a party defendant as warrantor of the title. He also set up his lien for his purchase money. Smith and the other defendants made a common fight against Mrs Lacy, being represented by the same attorneys.

In 1873 Smith died and his executor became a party. On a trial the defendants defeated Mrs. Lacy's claim, but on appeal the cause was remanded. On the 5th day of February, 1873, an execution for costs amounting to $18.20 was issued out of the Supreme Court against all the defendants except Smith's administrator, and was executed by levying on their interests in the land in controversy and selling the same on May 6, 1873, for a consideration of $30. A. B. Hooks became the purchaser, and the sheriff on the same day executed to him a deed effectively conveying to him their interests in the land, which at that time was on the face of the record the entire title.

In January, 1874, Hooks sold the land to P. S. Watts for a recited consideration of $1,000, and in May, 1877, Watts conveyed to J. G. Minter for a recited consideration of $2,000. These deeds were duly recorded soon after their execution. On the 10th day of June, 1903, the heirs. of J. G. Minter and wife and the heirs of Bringhurst, Pannell and Reed entered into a written agreement in which all differences between them were adjusted as to the title to the land and the validity of the execution sale under which Minter held, and the parties to the agreement thereby, as between themselves, became the common owners of the land in controversy and thereafter became the plaintiffs in this suit. Under that agreement they all claim under the defendants in the Lacy suit and also through the execution sale to Minter.

We return now to the further history of the suit brought by Mrs. Eliza Lacy. Pursuant to the reversal it was tried again and judgment rendered in her favor for 200 acres of the land, to embrace Sour Lake and the improvements. On the appeal of defendants the Supreme Court in 1879 reversed and rendered the judgment awarding to Mrs. Lacy on her homestead claim an undivided half interest of 100 acres in 200 acres, including the improvements at Sour Lake, the 200 acre tract to be designated by the District Court out of which 100 acres was to be partitioned to Mrs. Lacy. The trial court thereafter procured the 200 acre tract to be designated and marked out and appointed commissioners to partition 100 acres thereof to Mrs Lacy. This was never done. No further proceedings were had in the cause and it was thereafter dismissed for want of prosecution.

On October 22, 1880, Gilbert Lacour and wife in an action of trespass to try title against James G. Minter and one Minerva Muchant recovered a judgment against Minter for the title and possession as of the homestead right of Lacour's wife, but the description contained in the judgment failed to identify any particular part of the tract and there was never any partition thereunder. Writ of possession was issued on this judgment in November, 1880, and was executed by W. W. Lyon, sheriff.

. In the year 1880 P. J. Willis of Galveston, Texas, undertook to acquire a good title to the Sour Lake property. For the purpose of throwing the litigation into the Federal Courts in case any should arise he determined to have all his conveyances made to H. Clay Ewing of

Missouri, Willis to be the beneficial owner. Thereupon he procured to be conveyed to Ewing all the interests which had ever been owned by Mrs. Lacy and her daughter, Mrs. Stone, all the Lacour interest and all the interest that the heirs of Smith may have inherited from their ancestor, W. R. Smith. On August 9, 1881, Ewing executed a deed conveying all the property to Willis for a recited consideration of $25,000. The conveyances by which Ewing acquired the land are minutely recited in the body of his deed to Willis.

So far it appears that Willis acquired whatever interest remained in W. R. Smith and the interests of Mrs. Lacy and the Lacours, but neither his deed from Ewing nor the records of the county disclose that he had in any way connected himself with such title as Minter had. The relation of the Minter title to this appeal and the facts affecting Willis's connection therewith will be disclosed later on in this opinion.

In 1890 S. S. Ash became the owner of the tract by mesne conveyances from Willis and occupied it for some time. February 15, 1896, S. S. Ash conveyed to Newton and Freeman by special warranty deed, but reacquired it thereafter. On August 1, 1899, S. S. Ash deeded the property (less 135.65 acres known as the Ash reserve and not involved in this controversy) to the Sour Lake Springs Company, a corporation, which company on June 1, 1901, conveyed a specific 50 acres thereof to an oil company for a recited consideration of $20,000. The Sour Lake Springs Company sold the remainder on March 28, 1903, to George S. Dearborn for a recited consideration of $900,000. He in turn conveyed it to the defendant, The Texas Company, reciting $30,000 and other considerations. This deed was recorded August 10, 1903.

In 1903 the Sour Lake lands were proven to be an oil field of great extent and marvelous richness. On account of the curative properties of Sour Lake and Sour Lake Springs the property immediately surrounding the lake has always been regarded as very valuable, but the outlying land was a wilderness and had little or no value until the discovery of oil.

As there is an entire absence of evidence tending to show that W. R. Smith reacquired any title to the land by reason of his purchase money notes executed by Gentry, and as the sale under execution for costs is not assailed as invalid for any reason, the title of Minter and the homestead claim of Mrs. Lacy are clearly of first importance. The defendant unquestionably owns whatever interest Mrs. Lacy acquired by her homestead suit as well as such interest as the Lacours acquired by a like suit.

Inasmuch as all the plaintiffs, by virtue of the joint agreement of 1903, are able to claim either as the heirs of Minter or under them, it is obvious that the defendants must suffer a reversal of the judgment unless the undisputed proof shows that they have title by limitation of five or ten years or the evidence supports the verdict of the jury on the issue of verbal sale by Minter to Willis.

The evidence presented the issue of limitation of five years, but as the jury did not find upon the issue we have not deemed it necessary to set out the evidence bearing upon the point. The undisputed proof also showed adverse possession of ten years as against the plaintiffs, but the jury did not find upon that issue. That issue is subject to the

question of segregation as affecting the extent of possession and in the same way by the fact that the conveyances under which the claim was made were not of record. We will touch upon these questions further on in this opinion.

By the first assignment of error appellants assail the action of the trial court in submitting the issue of parol sale. The ground of the objection is that the issue is not presented by the evidence. Other assignments and propositions assailing the verdict as without support in the evidence will be disposed of in the discussion of the first. It is well to state in this connection that the trial court submitted the cause to the jury by a general charge, but it was so framed that they were required to state the issue upon which the verdict was based.

The law governing parol sales of real estate and limitations were given, and those three issues as well as that of a written transfer were submitted. The charge affecting the issue of parol sale is not attacked as containing any unsound proposition of law. It is assailed alone upon the ground stated. In determining this question the requisites necessary to take the transaction out of the operation of the Statute of Frauds must be borne in mind. First, the minds of the parties must have met in an oral agreement to sell. Second, the purchase money must have been paid and possession delivered by the vendor to the vendee. Third, on the faith of the transaction the vendee must have made valuable improvements upon the property. If these three things concur, it is immaterial whether the sale be evidenced by any writing.

The evidence upon the issue is in substance as follows: P. J. Willis testified in substance that in 1881, after the consummation of the transaction with and through Ewing, he went to Sour Lake and found Minter in possession, conducting the Sour Lake hotel which in large part composed the improvements on the property. That so finding him in possession and knowing of his claim, he decided to buy him out before proceeding further. That he did not think much of Minter's title, but would not have entered on the construction of the extensive improvements which he had in view until he could dispose of Minter's claim. That he spent two or three days at the hotel with Minter getting an inventory of the hotel furniture and coming to an understanding with him. That Minter finally decided to accept $500 for the furniture and his title to the land. That he paid Minter the money and Minter gave him a written receipt therefor reciting the purpose for which it was given and received. That he, Willis, then returned to Galveston, bringing the paper with him. It was thereafter lost, and he has never been able to find it and has never seen it since.

A. Chimene, who is shown by other testimony to have been acquainted with the parties and to have been about there at the time, testified that he remembered the visit of Willis to the hotel. That Minter was in possession at the time. That he saw Willis and Minter about the hotel making a list of the furniture and talking together. That on the last day of Willis's presence there during that trip he saw Minter and Willis at the dining room table. Saw Willis pay Minter $500, and saw Minter write and sign a paper and hand it to Willis. That from what he heard of the conversation Willis was to give $300 for the furniture and $200 for the land. This witness and Willis both testified that

Minter thereupon abandoned the property, and all the testimony is agreed that after 1881 he never paid taxes on the property or in any way asserted ownership of it or any part of it thereafter. Willis proceeded at once to improve the property, and spent about $40,000 in the construction of new and extensive improvements. He and those claiming under him have been in possession of it ever since, enjoying its active ownership and claiming the entire tract. Willis soon after he took possession had the entire tract surveyed and the lines clearly marked. Minter was a lawyer and lived at the town of Liberty, but a short distance from the property. He died in 1892 at that place. Though his deed was of record and the original in the hands of his administrator the property was not listed as a part of his estate. His heirs and others of the plaintiffs have lived near the property ever since and never asserted a claim to the property until shortly before the institution of this suit in 1903. Chimene states that he saw Minter in Houston in 1884 or 1885 and in a conversation concerning former days at Sour Lake Minter stated he had sold his interest there to Willis.

Steve Jackson, a son of the original grantee and a man who has lived all his life on the Jackson league, states that he knew Minter who was running the Sour Lake hotel before Willis came. That in a conversation with Minter afterwards Minter stated that he had sold out to Willis. Minter was then leaving the hotel. Vendeventer, Chambers and Sheriff Lyon testified to declarations on the part of Minter to the same effect. S. S. Ashe (a vendee under Willis) testified that Minter was a guest at the Sour Lake hotel in 1890 and congratulated him, Ashe, on the latter's purchase of the property. Stated that he regarded it as a valuable piece of property, and that if Ashe would hold it it would make him rich. There are other facts and circumstances in evidence tending also to support the theory of a sale.

On the other hand, appellants adduced testimony tending to show that Minter was not in possession when Willis bought, and that there was no transaction between Minter and Willis either oral or written. The evidence and circumstances adduced tending to impeach Willis and Chimene were in their nature extraordinary and doubtless induced the jury to pass unsolved the issue as to whether the transaction between Willis and Minter had been reduced to writing. We do not set it out because it bears only on the issue of credibility and with that we have nothing to do.

Appellants claim that the evidence tended to support a written transfer only, and the issue of parol sale was not raised, and that as the jury did not find upon the issue of written transfer, the judgment can not stand.

Appellee contends that though the jury may have refused to believe the transaction was evidenced by a writing, yet there was ample evidence to show that the minds of the parties met in oral agreement and that the payment of consideration and the other requisites of a valid parol sale of land followed.

We can not assent to the proposition advanced by appellants. It is true there can be a transfer of real estate evidenced entirely by written instruments, as where the bargain is made by letter or telegram and the deed prepared and delivered without a meeting between the par-

ties. But where the parties meet and discuss the proposed transaction and it is consummated while they are together, then in the nature of things an oral agreement precedes the writing, the latter being but the best evidence of the former.

This proposition seems too plain for discussion. The evidence adduced by defendants furnishes an apt illustration of the rule and the reason for the rule. Here Willis testifies to a contract which was reduced to writing, Chimene corroborates him. Their credibility is effectively assailed and by their own conduct and admissions they are perhaps so placed before the jury that their uncorroborated word can not be taken for anything. The writing they refer to has not been seen by any other living person. So the jury pass the uncorroborated portion of their testimony. They find, however, that other witnesses unprejudiced and credible testify to facts and to conduct and declarations on the part of Minter which can not be easily reconciled upon any reasonable theory except that some sort of sale was made to Willis.

In the light of the corroborative evidence they conclude to accept the testimony of Willis and Chimene that there was a sale, that the money was paid, possession delivered and improvements made in pursuance of the transfer. This is clearly what the jury did. If then the actual facts are as the jury found them, justice would be defeated if those facts were discarded merely because the witness who testified that the bargain assumed a written form were not believed by the jury.

But the proposition is advanced by the appellants that if any presumption is indulged from the facts adduced it must be that the transaction assumed a lawful form and under the statute of frauds a parol conveyance of lands is unlawful. This theory is presented with much ingenuity and force, but after all the answer to it is obvious. It is true that article 624, Revised Statutes, declares in effect that no real estate shall be conveyed except by an instrument in writing, but as limited by construction there are other means of conveyance recognized by the courts as lawful and so enforced. The classes of contracts regulated by the Statute of Frauds are not declared by the statute to be illegal and void. It merely provides a means of successful resistance in case the statute is not complied with. It is not the compliance with the statute which constitutes the contract. The statute presupposes its legality, the enforcement of which is only suspended by the statute until its provisions are satisfied. (Robb v. Railway Co., 82 Texas, 395; Brown on Statute of Frauds, sec. 115a.)

If the contract itself is illegal or against public policy the aid of the statute is not needed to defeat its enforcement. (Warvelle on Vendors, sec. 115.) The right to avail of the statute is personal and generally a stranger to the contract can not take advantage of the statute. (Warvelle on Vendors, sec. 156; Railway Co. v. Settegast, 79 Texas, 256, and authorities cited.) To be availed of at all the point must be made either by the pleading or objection to evidence. (League v. Davis, 53 Texas, 9.)

Recurring to the question of presumptions and inferences from facts and circumstances, it is correct to say that when they suffice to authorize the presumption of a transfer everything is presumed to have occurred necessary to render the transfer valid and effective. The truth is when

one is driven to rely on facts and circumstances to establish a conveyance, the court is rarely able to determine what was the exact nature of the transfer. It may have been a bond for title with the condition discharged, but no final conveyance. It may have been a deed with title retained to secure purchase money, but no release when purchase money was paid. It might have been a parol sale, as is here claimed. The court does not enter into such details because if the facts suffice to authorize the inference of the highest form of conveyance it includes all lesser forms, and the details become immaterial. The philosophy of the doctrine is that the transaction will be presumed to have assumed such a form as effectively passed the title. But even if the proposition of appellant should be upheld it would not seriously affect the question we are considering.

The testimony of Willis and Chimene, if accepted as true, establishes the existence of a parol contract reduced to writing. The jury had the right in their discretion to accept their testimony in part and reject it in part. This being true, we have not a case of circumstantial evidence, but one of direct evidence corroborated by circumstances.

Up to this point we have had little difficulty in concluding that the assignment is without merit. But two other objections are urged which present questions of some difficulty. One is that there is no evidence that Willis entered upon the property and made the improvements relying solely on the transaction with Minter.

The other is, that the entry, possession and improvements were upon the segregated 200-acre homestead tract surveyed out in the Lacy homestead suit, and so the remainder of the tract was not thereby affected. In the light of the facts the first of these objections involves the question whether one who has purchased conflicting claims to a tract of land can in any event hold against one of them under a parol sale. The difficulty grows out of the general rule that the possession and improvements must be referable solely to the parol contract.

Upon whatever grounds, however, parol sales of real estate have been upheld in other jurisdictions we are satisfied that in this State they are upheld on the theory of estoppel. We do not pause to discuss the point, but content ourselves with the citation of representative cases. (Wooldridge v. Hancock, 70 Texas, 21; Lodge v. Leverton, 42 Texas, 18.)

The inquiry then is, was there any evidence tending to establish an estoppel as between Minter and Willis? According to the testimony of Willis he undertook to buy up the conflicting claims to the Sour Lake property. He purchased the claims of Lacy, Lacour and the heirs of Smith, paying therefor in the aggregate about $20,000. When he came to take possession he found Minter in charge under a deed to the whole tract. Minter had refused to recognize Mrs. Lacy's claim. While he did not regard Minter's title as paramount and laid small stress upon it as a title, he nevertheless would not have proceeded with his plans, which involved the expenditure of large sums of money, until he could dispose of Minter. If his statement is true, he disposed of Minter's claim for a valuable consideration. That it was small may be accounted for by the state of the title generally and the fact that Minter's right

grew out of a sale under execution for costs and for a very small consideration.

But with the size of the consideration moving from Willis to Minter we have nothing to do since its adequacy to sustain the contract is not questioned. Nor are we concerned with the credibility of the witness. He so testified and the jury believed him. Therefore, although it is true that Willis would not have proceeded but for his other purchase, and his conduct was largely influenced by them, the verdict establishes the contention that he also relied on the transaction with Minter, and that but for that the progress of his plans would have been arrested and he would not have expended the large sums he did expend in improvements until he had disposed of Minter's claims by purchase or in some other way. We have then the ordinary elements of estoppel, and we can perceive no good reason why one who purchases several adverse claims may not avail of the defense against any one of his vendors against whom it may be appropriate under the facts.

If the proposition is not sound, then a tenant in common can not under any circumstances acquire the title of his cotenant except by an instrument in writing. The selling cotenant can not in any way estop himself as against the purchasing cotenant because the latter has neither entered nor improved with sole reference to the purchase and this one was asserting an exclusive right against the other.

The second of the objections last mentioned we regard as also without merit. The tract was unquestionably an entirety until the survey of the 200 acres under the Lacy decree. While owned in common by Minter and Mrs. Lacy by reason of her homestead interest and his purchase under the sheriff's sale, he claimed it all and refused to admit Mrs. Lacy into joint possession. The survey by the commissioners of the 200 acres was not a permanent segregation of that much from the remainder of Minter's land. He owned an undivided interest in the 200 acres after the survey as before. It seems to us the 200-acre survey may properly be regarded as having been marked off as a means to an end, that is, the awarding to Mrs. Lacy of her 100-acre interest, and that when that was allotted to her in kind the other hundred acres would have lapsed into the larger tract, the ownership of which remained in Minter. That the suit was dismissed before the partition was consummated can make no difference one way or the other.

We think there is also much reason in the theory that if Minter, treating the tract as an entirety, sold it to Willis, then as between him and Willis it should be so treated in this controversy. On the whole we conclude there was evidence presenting the issue of an effective parol sale. This conclusion disposes also of the assignment assailing the verdict on the ground that it is entirely without evidence to support it.

Appellee contends that the judgment might be sustained on the ground that the undisputed proof establishes limitation of ten years. It is true that adverse possession for the requisite length of time and every other element necessary to establish the plea as to the entire tract was shown but for the question of segregation and registration of deeds under which the claim was made. While the possession of Willis, as were his improvements, was confined to the Lacy survey of 200 acres,

we are inclined to think the character of segregation shown would have no more effect on the issue of limitation than on possession under parol sale.

On the question of the right of a claimant under the ten years statute of limitation to recover to the boundaries of the deed under which he claims, this court has expressed the opinion that the claim could not be maintained unless the instrument was duly registered. (Doom v. Taylor, 35 Texas Civ. App., 251, 79 S. W. Rep., 1086; Watts v. Bruce, 31 Texas Civ. App., 258, 72 S. W. Rep., 260.)

The expressions were not necessary to the decision of those cases, and, as is usual when such is the case, were not the result of mature investigation. In view of the rule of decision as to possession under deeds and other written muniments of title prior to the passage of article 3344 (Craig v. Cartwright, 65 Texas, 413), we are now inclined to think the article ought to be so construed. It is improbable that the Legislature intended to place duly executed deeds upon a lower plane than muniments of title of less dignity. Under the former law the claimant might put his muniments of title in his pocket unrecorded and give no other notice of the extent of his claim save that inferable from his possession and yet be permitted to claim to the boundaries in his written muniments of title. (Craig v. Cartwright, *supra,* p. 422.)

In that case Judge Stayton, in discussing the present article held that the law in that respect is unchanged·except as to such instruments as the law requires to be recorded.

The proviso in article 3344 permits an adverse holder under the ten years statute to claim to the limits of the boundaries defined in any recorded muniments of title (other than a deed) under which he holds. If by the article cited the Legislature intended to abrogate the existing rule in its entirety and substitute another in its stead, then muniments coming within the definition of a deed are no aid to the claimant, even if recorded. In fact this is the contention of appellants as to the meaning of the statute now in force. We are inclined to the opinion the article does not evince an intention on the part of the Legislature to abrogate the rule then existing, but only to change it so far as written muniments of title other than deeds were concerned and to leave it unchanged as to deeds.

This case has developed some unusual features, one of the most remarkable being that the present title to this rich property should depend on a homestead claim asserted more than 25 years ago and not followed up, and a sale under an execution for costs amounting to only $18. Another is that the Minter title which Willis confesses he had forgotten that he ever owned, which defendants did not know they were purchasing when they bought the Willis title and which the Minter heirs appear to have ignored until 1903, should now prove paramount as to about eight-ninths of the property.

None of the remaining assignments need to be discussed. They are without merit. For the reasons given we have concluded the judgment should be affirmed, and it is so ordered.

*Affirmed.*

Writ of error refused.