## GARRETT v. DANNER.

(Court of Civil Appeals of Texas. Amarillo. March 2, 1912. Rehearing Denied April 6, 1912.)

1. CONTRACTS (§ 352*)—CANCELLATION—EFFECT—QUESTION OF FACT.

The cancellation of a contract by mutual agreement does not as a matter of law abrogate the right of either party to recover damages resulting from breaches before the cancellation; the right to recover such damages usually depending upon the intention of the parties at the time of cancellation, which is generally a question of fact.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1200, 1824–1828; Dec. Dig. § 352.*]

2. FRAUDS, STATUTE OF (§ 144*)—RIGHT TO PLEAD—WAIVER.

A lessor waived his right to plead the insufficiency of the lease under the statute of frauds as preventing its enforcement, where he urged the statute as a bar to its enforcement as to only a part of the term covered by the lease, and himself pleaded and sought to rely on an oral contract for the whole term.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 351; Dec. Dig. § 144.*]

3. FRAUDS, STATUTE OF (§ 125*)—PART PER-
FORMANCE.

Though a lease was insufficient under the
statute of frauds, if the lessee with the les-
sor's knowledge and acquiescence, as part
performance of the contract, furnished supplies
and boarded the lessor and his hands when
he had not agreed to do so, the lessor will be
liable for the reasonable value of such part
performance, of which he received the benefit.

[Ed. Note.—For other cases, see Frauds,
Statute of, Cent. Dig. §§ 275–277½; Dec. Dig.
§ 125.*]

4. LANDLORD AND TENANT (§ 48*)—BREACH
BY LESSOR—MEASURE OF DAMAGES.

The lessee's damages for the lessor's
breach of a valid lease would be what the en-
tire term of the lease was worth to him, pro-
vided he had not breached it, or it had not
been canceled by mutual agreement, in which
latter event he could only recover for such
just claims as he had at the time of the can-
cellation.

[Ed. Note.—For other cases, see Landlord
and Tenant, Cent. Dig. §§ 114–116; Dec. Dig.
§ 48.*]

Appeal from District Court, Moore Coun-
ty; D. B. Hill, Judge.

Action by J. W. Danner against J. W.
Garrett. From a judgment for plaintiff, de-
fendant appeals. Reversed and remanded.

J. A. Stanford, of Amarillo, for appellant.
Clifford Braly and W. B. Chauncey, both of
Dalhart, for appellee.

GRAHAM, C. J. On May 27, 1910, appel-
lee brought this suit against appellant in
the district court of Moore county, alleging,
in substance, that about January 25, 1909,
he leased certain lands and premises, describ-
ing them, together with certain live stock,
tools, and farming implements, to appellant
for a period of five years, and that a memo-
randum of said contract was reduced to writ-
ing and signed by appellant and appellee,
but that about May 21, 1910, appellant and
appellee by mutual consent abrogated and
terminated said contract of lease or rental,
alleged that on all dates mentioned appellee
was the owner of the lands and premises,
and then alleged that notwithstanding the
rental or lease contract had been so abro-
gated, and that appellee had on May 26,
1910, given appellant written notice to va-
cate said lands and premises and surrender
the possession thereof, appellant had failed
to do so, and had ejected appellee therefrom.
Allegation is then made of the ownership by
appellant of certain personal property, de-
scribing it, located and running on the lands
and premises described and the wrongful
possession thereof by appellant, allegation
being made of the amount of damages sus-
tained by appellee as a result of the alleged
wrongful acts by appellant and prayer is
then made for recovery of title and posses-
sion of the property, real and personal, as
well as the alleged damages in the total sum
of $12,000. On May 27, 1910, appellee caused
to be issued sequestration process for the

possession of the real and personal property
described in appellee's pleadings, which was
on May 28, 1910, executed by the proper
officer taking all of said property into his
possession under said process. On July 25,
1910, appellant answered by general demur-
rer, general denial, and then pleaded, in sub-
stance, that about January 1, 1909, appellee
and appellant had entered into a lease or
rental contract covering the lands, premises,
and personal property described in appellee's
pleadings for a period of five years, and
alleged that only a part of said contract
was reduced to writing and that the remain-
der was oral, and then alleged that the ap-
pellee had, as a part of said rental or lease
contract, agreed to purchase and stock the
lands and premises to their capacity, and
also that appellee had agreed at his own ex-
pense to support and maintain appellant and
his family in their family expenses for the
first year of said lease, and also that appel-
lee had agreed to do certain improving on
said premises at his own expense; that un-
der said contract appellant was to have the
exclusive management, control, and posses-
sion of all the real and personal property
during the entire period covered by the
lease; that as a part of said contract one-
half of all the expense incurred by appellee
in purchasing stock to place on the premises
should be repaid by appellant from his por-
tion of the profits arising from the venture
as he could spare the same, it being further
alleged that under the contract appellee and
appellant should share equally in the pro-
ceeds or profits arising from the conducting
of said business. Allegation is then made
that appellant went into possession of the
premises, and had at all times fully com-
plied with his part of the contract, but that
appellee had failed in many particulars to
comply with his portion thereof; allegation
being made of the failure by appellee to
make certain improvements on the place
necessary to its being a comfortable abode
and place of residence for appellant and his
family, as appellee under the contract agreed
to do. Allegation is also made of the fail-
ure by appellee to buy and put stock on the
place as he had agreed to do; also a failure
to defray the expense of appellant's family
for the first year as appellee had agreed to
do and as a consequence thereof that appel-
lant had been compelled to do so at his own
expense of $600. Appellant also alleged that
he had boarded appellee and his work hands
at the instance and request of appellee at
an expense to appellant of $100. Appellant
expressly denied that the rental or lease
contract had been abrogated at any time by
mutual agreement, and alleged the unlawful
and forcible taking from appellant of said
premises and property, real and personal,
under the sequestration process, and then
alleged that, if at any time appellant had

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

abandoned said premises, it was made necessary, and had resulted, from appellee's failure to comply with his part of said contract, and was not voluntary on appellant's part. Allegation is then made of the amount of profits appellant could and would have made under said contract had appellee performed the same, and asked for damages in an amount equal to said profits, and also for the recovery of the $600, as well as the $100 item, and also for damages for the issuance and execution of the sequestration process; prayer being made for damages in the aggregate sum of $7,600. On July 24, 1910, appellee filed his first supplemental petition, consisting of a general demurrer and many special exceptions, and containing specific denials of the allegations of appellant as to many of the oral stipulations of the contract of rental as alleged by appellant. By a trial amendment appellee pleaded the statute of frauds as against a recovery on the oral stipulations set up by appellant for all years except the year of 1909.

Appellee introduced in evidence the written memorandum of contract as follows: "This contract made and entered into by and between John W. Danner, party of the first part, and J. W. Garrett, party of the second part. Party of the first part agrees to furnish everything to start with and J. W. Garrett, party of the second part, to pay party of the first part for one half (½) of same as soon as able; party of the second part to have a living out of what is raised on the farm and one half (½) of what is sold and to do the work. Neither party to buy or sell anything without consulting the other. This contract will hold good for a term of five years. Signed this 25th day of January, 1909. J. W. Danner. J. W. Garrett." He then testified, in part, as follows: "On or about January 25, 1909, I entered into a contract with the defendant J. W. Garrett. The memorandum of said contract was reduced to writing, and is the same as has just been introduced in evidence. We discussed the terms of said contract at the time it was written and signed, and also prior thereto. It was our interpretation or my understanding of same that, to begin with, I was to furnish the land and premises, together with such stock, tools, and implements as might be necessary to the cultivation and running of said place; that Garrett, if he was able and saw proper to do so, would buy a half interest in the live stock, tools, implements, etc., which was on the place at a valuation we placed on such personal property at the time of making the deal. It was further understood that of the products raised on the farm by Garrett he was to have the right to use whatever part of same that might be necessary and could be utilized for the purposes, either to feed the stock or for himself and family to consume, and that all that was raised on the farm over and above

what was used in the ways mentioned to be sold and the amount derived therefrom divided between us; that Mr. Garrett was to perform or have performed all of the work required in cultivating and conducting the place; that all sales of products raised on the farm was to be made by us acting jointly and that the contract was to extend for a term of five years from the 25th day of January, A. D. 1909. At the time of making the contract I owned 640 acres of land in Moore county, and it was the intention under the contract that Mr. Garrett and his wife should come to Texas and occupy and manage said farm. There was a very good house, a fairly good smokehouse and good sheds on said farm, and there was about 240 acres of land in cultivation. All of the section was fenced. The grass land was fenced off from the cultivated land. I was to furnish Mr. Garrett all the stock, tools, and machinery necessary to run said farm and did furnish him one gray mare mule, one light bay or sorrel mare mule, one brownish black mare mule, one brownish black horse mule, two bay mares, one pony mare, one bay horse, one white cow, one brindled cow, fourteen head of hogs, shoats, and pigs, one disc plow, two cultivators, two gang plows, one corn planter, one lister, one harrow, two hoes, two wagons, and four sets of double harness." He then in his testimony describes the section of land, and states that Mr. Garrett took possession thereof under the contract.

The evidence further shows conclusively that the lands and premises, as well as personal property intended to be covered by the lease contract, included all those mentioned in appellee's evidence above copied; and appellant's evidence tends to show that the other matters and things alleged in his pleadings were also parts of the contract, and it also tends to show the expenditure of the $600 in support of his family during the first year of said lease, and that appellant had failed to furnish the funds for that purpose. It also tends to show the boarding of appellee and his employés at an expense of $100, as alleged, as well as a failure of appellee to comply with many of the provisions of the contract as alleged by appellant in his pleadings, though the evidence was conflicting on many of these issues. The evidence, without conflict, shows that soon after the lease contract was made appellant moved from another state where he had formerly lived to the property covered by the lease contract, and took possession of the lands, premises, and personal property, including the live stock on the place, and continued in such possession until ousted by the officer under the sequestration process.

There was a sharp conflict in the evidence on the issue of the cancellation of the contract of lease, but there is no evidence to the effect that even if there was a cancella-

tion of the lease contract by mutual agreement about May, 1910, as claimed by appellee, it was expressly agreed that the rights, liabilities, or claims which either party had against the other, and which may have arisen as a breach of the contract prior to the cancellation, were settled or abandoned. A trial before a jury resulted in a verdict and judgment for appellee for the title and possession of the lands and premises, as well as for the title and possession of all the property sequestered. The judgment further providing that appellee take nothing on his alleged claim for damages for breach of the contract by appellant, and appellant take nothing on his alleged claim for damages for alleged breach of the contract by appellee. From this judgment appellant has appealed to this court, and submits the case in this court on the assignments of error discussed below.

Appellant's first assignment is as follows: "The court erred in the first paragraph of the general charge, instructing the jury, in effect, that, if they believe from the evidence that plaintiff and defendant by mutual consent, abrogated, or terminated the original contract, then they should find for the plaintiff on all the issues involved in this case, because said charge wholly ignored other important issues made by the pleadings and evidence herein."

Appellant's second assignment is as follows: "The court erred in refusing to give in charge to the jury the defendant's special charge No. 2, because same sought to have submitted to the jury the issues that were made by the pleadings and evidence, and which issues were nowhere submitted to the jury in the general charge."

Appellant's third assignment of error is as follows: "The court erred in refusing to give in charge to the jury defendant's special charge No. 3, because same sought to have submitted to the jury the issues made by the pleadings and evidence which is nowhere submitted in the court's general charge."

The portion of the court's charge complained of in the first assignment is as follows: "The parties admit the execution of the written contract introduced in evidence in this case, and admit and agree that the premises therein leased is section No. 118, block 44, H. & T. C. Ry. Co., in Moore county, Tex., and the court charges you that under the terms of the said contract the defendant, J. W. Garrett was entitled to have possession and use of said section of land for a term of five years, from the 25th day of January, 1909. The plaintiff, J. W. Danner, however, by his petition herein, charges and alleges that on or about the 21st day of May, 1910, the plaintiff and defendant by mutual consent abrogated and terminated said contract, and the defendant, by proper pleading, has denied abrogating and terminating said contract, and, as to this issue, you are charged by the court that, if you find and believe

from the evidence that plaintiff and defendant did on or about the time alleged in plaintiff's petition by mutual consent abrogate and terminate said written contract, then you will find for the plaintiff as to all of the issues in this case, and need not consider the cross-action of the defendant J. W. Garrett for damages. You are further charged that under this issue stated in this paragraph of this charge the burden of proof is on the plaintiff, J. W. Danner, to establish same by a preponderance of the testimony, and, unless you believe from a preponderance of the evidence the plaintiff and defendant did by mutual consent abrogate and terminate the said written contract as alleged by plaintiff, then you will find for the defendant J. W. Garrett on his cross-action against the plaintiff, for such damages, if any, as he has sustained by reason of his being dispossessed of the premises in controversy."

Appellant's special charge No. 2, requested, is as follows: "Gentlemen of the jury, the court instructs you that if you believe from the evidence that plaintiff agreed to furnish defendant supplies to live upon during the first year of said lease contract, and if you believe plaintiff failed to furnish such supplies, and that defendant was compelled to furnish same himself, then you will find for defendant and against plaintiff whatever amount you believe such supplies used by defendant during the first year was reasonably worth and so say by your verdict."

Appellant's third special charge requested is as follows: "Gentlemen of the jury, the court instructs you that if you believe that plaintiff boarded with defendant or had other men in his employ board with defendant, and that defendant had not agreed to board said parties free, then you will find for defendant on his cross-bill what you believe the board of said parties was reasonably worth, and so say by your verdict." The contention made by appellee under the assignment above copied is that the court necessarily held as a matter of law in giving his main charge that if by mutual agreement between appellee and appellant, made about May 20, 1910, the lease contract theretofore existing was canceled or abrogated, even though there was no express agreement to that effect, appellant lost his right to recover damages which he claims he had sustained prior thereto as a result of the breaches of said contract committed by appellee. We think the portion of the court's main charge complained of is open to the criticism made, and, having failed to embody in his main charge the issues presented in appellant's second and third special charges, there was also error in failing to give them as charges submitting the same issue.

[1] As we understand the law, the cancellation of a contract by mutual agreement between the parties thereto does not as a matter of law abrogate the right of either party thereto to recover for injuries or dam-

ages that may have arisen as a result of breaches thereof which may have occurred prior to the cancellation by agreement, and in most instances the question of whether or not the right to recover damages for such breach or breaches depends upon the intention of the parties at the time of making the contract of cancellation, which ordinarily is a question of fact, to be ascertained by the court or jury. Alabama Oil & Pipe Line Co. v. Sun Company, 99 Tex. 606, 92 S. W. 253.

[2] Appellee insists in this court that no reversible error was committed in giving the main charge complained of or in refusing to give the special charges mentioned, for the reason that the contract was for an interest in lands for a period of more than one year, and was not sufficiently reduced to writing to take it out of the statute of frauds, and was therefore not enforceable. The record shows that appellee on the trial urged the statute of frauds as a bar to a recovery only as to the years after 1909, and it further shows that he then both pleaded and sought to prove an oral contract for the entire period of five years, thus, we think, waiving any such rights as might have accrued to him under the statute of frauds, if, in fact, appellee's plea on this question under the record could avail him. Erhard v. Callaghan, 33 Tex. 171; International Harvester Company of America v. Campbell, 43 Tex. Civ. App. 421, 96 S. W. 93.

[3] Under the record, it is also made to appear that appellant made the expenditures sought to be recovered under his second and third special charges under the contract, with the acquiescence and consent of the appellee, and as part performance of the contract, and under the law, as we understand it, even if it were admitted that the lease contract was not sufficient as against a plea urging the statute of frauds, appellee, having received the benefit of such part performance of the contract, will not be allowed to escape the liability to appellant for said part performance. Bringhurst et al. v. Texas Company et al., 39 Tex. Civ. App. 500, 87 S. W. 893. On another trial, if a sufficient memorandum of the lease contract is not shown to take it out of the statute of frauds, as announced in the case of Johnson v. Granger, 51 Tex. 42, appellant's right of recovery, if any, should be limited to the sums expended in carrying out the contract with the knowledge and consent of appellee until said contract was abrogated by mutual agreement, if it was so abrogated, and, if it was not, then until appellee elected to cancel it and did so.

[4] If sufficient written memorandum is produced on another trial to take the lease contract out of the statute of frauds, then appellee's right of recovery, provided the other evidence so warrants, would be not only the amounts expended before the service of the sequestration process, but all that the contract would have been worth to him during its entire life, unless he had himself breached the contract or by mutual agreement between himself and appellee canceled the contract before the service of said sequestration process, in which event he could only recover for such just claims as he may have been entitled to at the time of the cancellation agreement, and not that if it was agreed and understood in the cancellation agreement that they too were settled thereby.

The other errors complained of by appellant will not likely arise on another trial, and they will therefore be overruled without further discussion.

Because of the errors pointed out under appellant's first, second, and third assignments, the cause will be reversed and remanded; and it is so ordered.