JACKSON et al. v. PIPER et al.

No. 876.

Court of Civil Appeals of Texas.   Waco.

April 3, 1930.

Rehearing Denied May 29, 1930.

Oltorf & Oltorf and Carroll Pearce, all of Marlin, and Spivey & Spivey, of Waco, for appellants.

Higgins & Glass and Nat Llewellyn, all of Marlin, for appellees.

STANFORD, J.

This was a partition suit brought by Carrie Piper, a daughter of Alex Jackson and his first wife, Winnie Jackson, against other heirs of Alex Jackson by his said first wife, and Fannie Jackson, the surviving second wife, and a son by said second marriage. It was alleged that the plaintiff and defendants were joint owners of the land in controversy, setting out the respective interests of the parties, and praying for a division and partition of said lands, fully describing same. The respective interests of the parties in two of the tracts were agreed to during the trial, leaving in controversy only two tracts, one of 61.56 acres and another of 58 acres, both together frequently referred to during the trial as one tract of 118 acres.

Appellants contended that the tracts in controversy were the community property of the second marriage, that is, the marriage of Alex Jackson with Fannie Jackson. Appellees contended that said tracts were either the separate property of Alex Jackson or the community property of the first marriage, or that at least title thereto had its inception prior to the second marriage.

In response to special issues, the jury made the following material findings: (1) That V. B. Ritter conveyed the 61.56-acre tract of land in controversy in this suit by deed or other written conveyance to Alex Jackson; (2) that V. B. Ritter did not convey the 58-acre tract by a deed or other written conveyance to Jackson; (4) that V. B. Ritter sold the 58-acre tract to Alex Jackson by a parol sale for a valuable consideration; (6) that Alex Jackson, after purchasing said 58-acre tract of land at parol sale, took possession of and claimed said property as his own; (8) that Alex Jackson made valuable improvements on the 58-acre tract prior to the time that he married Fannie Jackson; (9) that Alex Jackson and his first wife, Winnie Jackson, were holding adverse possession of the 61.56-acre tract at the time of the death of Winnie Jackson; (10) that Alex Jackson and his first wife, Winnie Jackson, were holding adverse possession of the 58-acre tract at the time of the death of Winnie Jackson.

On the above findings and such findings as the court was authorized to make, the court entered judgment for appellees, and appellants have duly appealed.

Under a number of propositions appellants contend, in effect, that the evidence was wholly insufficient to show that either tract of land ever became the community property of the first marriage, or the separate property of Alex Jackson. The record shows that the first wife of Alex Jackson died in 1883 while living on the land in controversy with her husband, Alex Jackson, and their children, claiming to own same as their home, and afterwards he and the children continued to occupy said land as their home until Jackson married his second wife, Fannie, in 1886. Appellee Carrie Piper, a daughter of Alex Jackson and his first wife, testified, in substance, that she was raised on the 118-acre tract; that her mother died there; that while she was living there with her father and mother the tract of land was all fenced in; that there was a house on it; that prior to the time of her mother's death, and prior to the time her father married Fannie, he made other improvements on said land; that he built another log house, other than the one they lived in, he fenced the pasture land, repaired other fences, recovered the old house, grubbed and cleared up the land, etc., all before he married Fannie, the second wife.

There was evidence from other witnesses to the same effect. Jennie Moore testified, in substance, that she knew Ritter, and worked for him and knew when Alex bought the place from Mr. Ritter; that Mr. and Mrs. Ritter claimed to own the place while they lived on it, and wanted to sell it because they had no white neighbors, and that Mr. Ritter lived there a long time; that Alex Jackson and Winnie, his first wife, moved on the place when Mr. Ritter moved off; that Mr. Ritter cleared the field; that Alex Jackson claimed he bought the place from Mr. Ritter, and Ritter said he sold it to Jackson.

Elijah Moore testified, in substance, that he had lived in Falls county about sixty-seven or sixty-eight years; that he knew Alex Jackson and knew Mr. Ritter, who owned a place on Big Sandy; that he learned Mr. Ritter wanted to sell the place, and talked to Alex about it and also Mr. Ritter; that it was generally understood that Mr. Ritter claimed to own the land; that he carried Alex to Mr. Ritter, and heard them talking, and Ritter told Alex he would let them have the place; that something was said about the price, but witness did not remember what; that, after Alex moved on the place, it was generally understood he bought it; that it was known as the Ritter place before Alex bought it; that Alex went to work grubbing, clearing, and fixing fences; that he began this as soon as he moved there with his first wife.

Plaintiff introduced in evidence, over appellants' objections, certain recitals from an exhibit filed with the papers in the suit of Nicholas Hanrick et al. v. E. G. Hanrick et al. It bore the file mark of J. H. Finks, clerk of the federal court at Waco. It was among the papers in the Hanrick suit which at one time was pending in the district court of Falls county. The district clerk of Falls county testified as to the custody of the document, and the parties agreed as to J. H. Finks' being clerk of the federal court. The recitals are as follows: "Fieldnotes of a survey of 61.5 acres sold to V. B. Ritter (then follow fieldnotes of the tract in controversy). Note: contract transferred to Alex Jackson, who now owns and occupies the above land."

■■■ The evidence, we think, is sufficient to show that Alex Jackson bought the two tracts of land, one being 58 acres and the other 61.56 acres, by parol agreement about 1879 or 1880, and that Alex Jackson and his first wife, on or about the time they purchased said land, went into possession of same, claiming same as their own, and made valuable improvements thereon, and continued to own and occupy said land until the death of Winnie Jackson in 1883; that after her death Alex Jackson and his children continued to occupy said land until Alex married appellant Fannie Jackson, in 1886, after which Alex Jackson, together with his second wife and children, continued to own and occupy said land until the death of Alex Jackson in 1926. We think there was evidence, if admissible, to support the material findings of the jury. It is true there was a deed made conveying to Alex Jackson the 61.56-acre tract of land herein involved on the 7th of March, 1891, after the death of Jackson's first wife, but in this case the controlling question is as to the time of the inception of the title of Alex Jackson, especially to the 61.5 acres, and in such cases it is well settled that title has its inception when the claimant goes into possession under a claim of ownership, based on equities or rights in his favor, and in such cases title relates back to, and has its inception as of, the date of such rights or equities, notwithstanding such title was not perfected by the execution and delivery of a deed until long afterward. Welder v. Lambert, 91 Tex. 510, 44 S. W. 281; Creamer v. Briscoe, 101 Tex. 490, 109 S. W. 911, 17 L. R. A. (N. S.) 154, 130 Am. St. Rep. 869; Jackson v. Jackson (Tex. Civ. App.) 258 S. W. 231; Evans v. Ingram (Tex. Civ. App.) 288 S. W. 494; Hand v. Errington et al. (Tex. Civ. App.) 233 S. W. 567, par. 6 (affirmed on writ of error).

■■ Appellants, however, contend that, if Alex Jackson prior to his second marriage did buy the land in controversy and go into possession and make valuable improvements thereon, said contract of sale and purchase was invalid and unenforceable by reason of the requirements of our statute of frauds (Rev. St. 1925, art. 3995), and that such parol sale was therefore wholly insufficient to constitute such an incipient right as would control the character of the title to said land with reference to being separate or community property. The statute does not declare parol contracts for the sale of land illegal or void. The enforcement may be successfully resisted when the statutory requirements are not observed, if the defendant invokes the statute, and has the right to do so, provided, of course, that there is no such part performance as takes the case out of the statute. It is not a compliance with the statute, however, which constitutes the contract. The statute presupposes its legality. Robb v. San Antonio Street Ry. Co., 82 Tex. 392, 18 S. W. 707; Simpson v. Green (Tex. Com. App.) 231 S. W. 375, and authorities there cited. The parol contract between Alex Jackson and V. B. Ritter, if admissible, was neither illegal nor void. If said contract was, as contended by appellants, unenforceable against V. B. Ritter by reason of the requirements of the statute of frauds, he alone could waive, and did waive, the benefit thereof, and we should so presume under the facts of this case. League v. Davis, 53 Tex. 14. Also Bell, Sheriff, v. Beazley, 18 Tex. Civ. App. 639, 45 S. W. 401; General Bonding Co. v. McCurdy (Tex. Civ. App.) 183 S. W. 796; Graham v. Kessler (Tex. Civ. App.) 192 S. W. 299. The defense was personal to him. Fannie Jackson and her children were strangers to said contract, and cannot be heard to question its validity on the ground of said statute. G., C. & S. F. Ry. Co. v. Settegast, 79 Tex. 256, 15 S. W. 228, and authorities there cited; Bringhurst v. Texas Co., 39 Tex. Civ. App. 500, 87 S. W. 893 (writ refused). Said parol contract of sale and purchase, together with the acts of the parties thereunder, as disclosed by the evidence, constituted such an equitable right to said property in Alex Jackson at and prior to his marriage to Fannie Jackson as to justify the court and jury in finding said land to be the community property of Alex Jackson and his first wife, Winnie Jackson, unless the execution of the deed from Hanrick and Gurley to Jackson, conveying to him the 61.5 acres, on March 7, 1891, constituted the inception of title as to said 61.5 acres. Hand v. Errington (Tex. Civ. App.) 233 S. W. 567 (affirmed after discussing other issues [Tex. Com. App.] 242 S. W. 722); Stiles v. Hawkins (Tex. Com. App.) 207 S. W. 89; Bishop v. Williams (Tex. Civ. App.) 223 S. W. 512 (writ refused).

■■ We think, also, the statements of witnesses for appellee as to the possession of the land in controversy by Ritter and Alex Jackson, and as to declarations by said parties pertaining to the ownership and possession of said land, having been made forty or forty-five years ago by persons now deceased, at a

time when no controversy was pending, and statements as to general repute as to the ownership in the neighborhood at the time, were admissible in evidence as the best evidence obtainable, particularly to show the character of claim asserted by Alex Jackson, and as circumstances evidencing the time when the title of Alex Jackson had its inception. See Rice v. Melott, 32 Tex. Civ. App. 426, 74 S. W. 935; Carlisle v. Gibbs, 44 Tex. Civ. App. 189, 98 S. W. 192; Brewer v. Cochran, 45 Tex. Civ. App. 179, 99 S. W. 1033; Frugia v. Trueheart, 48 Tex. Civ. App. 513, 106 S. W. 739; Hirsch v. Patton, 49 Tex. Civ. App. 499, 108 S. W. 1017; Thompson et al. v. Platt (Tex. Civ. App.) 154 S. W. 268.

Appellants contend further that the recitals in Exhibit A from the Hanrick suit in the federal court at Waco, and to the effect that said contract had been transferred to Alex Jackson, and to the effect that he now owns same, were improperly admitted in evidence. This instrument is set out in full above, and recites as follows: "Fieldnotes of a survey of 61.5 acres sold to V. B. Ritter (then follow fieldnotes of the tract in controversy). Note: contract transferred to Alex Jackson, who now owns and occupies above land." The paper to which the above exhibit was supposed to be attached was found among the papers of the Hanrick suit, which was pending in the district court of Falls county in 1879; it also bore the file mark of the clerk of the federal court at Waco, June 2, 1888. We know the said E. G. Hanrick, together with E. J. Gurley, did convey said 61.56 acres of land to Alex Jackson on March 7, 1891, but we do not know what was the purpose of the Hanrick suit, or what it was about, nor the contents of the answer of Hanrick therein, nor the contents of the exhibit referred to of which the excerpt put in evidence is a part. The paper from which said excerpt was taken was not put in evidence. The file mark of the clerk of the federal court was dated in 1888, but the Hanrick suit is not shown to have been in said court, but was in the state court in 1878. Appellants objected to the admission in evidence of said excerpt upon the ground it was not properly proven or authenticated to entitle it to be admitted. The court, we think, should have sustained this objection. This Exhibit A, we think, is important in connecting, if it does so, the inception of the title of Alex Jackson in about 1878, with the deed conveying the 61.5 acres of land made by E. G. Hanrick and Gurley to Alex Jackson in 1891. In other words, if said excerpt was a contract between Hanrick and Ritter for the purchase by the latter of the 61.5 acres, and if said contract was assigned to Jackson, and the deed made in 1891 was made by Hanrick and Gurley in compliance with the terms of said contract, then Jackson's title to said 61.5 acres had its incep-

tion with the date he acquired said contract, about 1878 or 1879, and said land would be community property of the first marriage. We think evidence can be produced that would render said exhibit, or a properly authenticated copy of same, admissible in evidence. For the error of the court in admitting said exhibit without its being properly identified or proven, the case is hereby reversed and remanded for another trial.

The other questions not discussed will not probably arise upon another trial.