## S. P. Bone v. A. B. Cowan.

Decided December 24, 1904.

**1.—Statute of Frauds—State School Land Purchase.**

. A party has the right to purchase additional school lands from the State where he has an equitable title to his home tract, by verbal purchase from another, such as entitles him to specific performance of such contract.

**2.—Same—Possession and Improvements.**

Where D.'s home was on land he had purchased from another by verbal contract only, for an agreed price, and he had taken possession of the land, placed some improvements thereon, found by the jury to be permanent and - valuable, and had' kept interest paid up on the agreed price, his title to the land was such ·as gave him and his successors in title the right to purchase additional school lands from the State.

**3.—Same—Deed to Sub-Vendee.**

D. having sold to B., the fact that the original vendor then made deed direct to B., who thereupon paid to such original vendor the price B. had agreed ·to pay, did not alter the case.

· Appeal from the District Court of Erath. Tried below before Hon. W. J. Oxford.

*Wm. Pannill* and *C. Nugent,* for appellant.

*Eli Oxford* and *J. B. Keith,* for appellee.

CONNER, Chief Justice.—The appellant instituted this suit in trespass to try title against appellee in the District Court of Erath County for the west one-fourth of the J. L. Loflin survey of land. The appellee pleaded not guilty, and this appeal has been prosecuted from a verdict and judgment in his favor. The land in controversy is state school land, and the appellant claimed the same by reason of an application and affidavit to purchase the same as additional to his home tract made and filed on April 30, 1902. His application was rejected however, on the ground of a prior award to N. Dingler, appellee's vendor. The proof shows that the Commissioner of the General Land Office had awarded the land upon an application of N. Dingler made January. 12, 1900. There is no question made of the regularity of the various applications and obligations of the opposing parties in this suit, or indeed of any other question save that appellant insists that N. Dingler at the time of his application and award was not the owner of his base or home tract of land, the home tracts of both parties being con-

tiguous to the land in controversy. The evidence relating to the issue of Dingler's ownership of his home tract is substantially as follows: A. V. Neeley, Dingler's father-in-law, in 1894 made a verbal sale to Dingler of 60 acres of the Neeley survey for $500, and delivered possession thereof to Dingler. Dingler was to pay the $500 when he "got able." No deed or other writing was made at the time, and Neeley did not require of Dingler the payment of the $500. Dingler, however, paid interest thereon from 1894 until after he sold the land, as hereinafter stated. There were some twenty acres of the land in cultivation, and Dingler, after he went into possession, rebuilt the entire fence around the place, put up a crib and horse lot, and put up a smoke house, and cleaned out a well on the place, the improvements being estimated by Dingler of the value of $35 or $40. He also put in cultivation some two or three more acres of land, the value of so doing does not appear. Dingler paid interest on the purchase money he had agreed to pay during the time of his occupancy save that during the years of 1899 and 1900, he paid to Neeley rent in lieu of the interest, he testifying that he was unable to pay the interest in 1899, a short crop year, and that he paid rent for the year 1900, to use his own language; "because I had paid the old man rent on a short crop year, and I thought it was nothing but fair that he should have the rent on a good crop year." On the 15th of March, 1901, Dingler and wife conveyed the land in controversy to appellee. At a date not shown in the record, but presumptively after the sale to appellee, Dingler, as he testifies, sold five acres of his home tract to appellant, S. P. Bone, for $100, and the remainder of it to J. K. Gammons for $450. It appears that Neeley recognized these sales, at least he made deeds to both appellant and Gammons. Part of the purchase money that Gammons was to give was evidenced by vendor's lien notes made payable to Neeley, but Dingler kept the $50 that was in excess of the $500 he had agreed to pay his father-in-law. Neeley, it appears, paid the taxes for the years that Dingler paid rent, and rendered the land for taxes as his own for the year 1900, but of these circumstances reasonable explanation was made. It is undisputed that Dingler remained in possession, used, occupied and claimed the 60 acres purchased from Neeley until and after the application to purchase and the award to him of the land in controversy.

It is undoubtedly true that in order to constitute Dingler a qualified purchaser it was necessary under our statute (Sayles' Civ. Stat., art. 4218fff) that he should have been the owner of his home or base survey. The statute, however, does not declare that such an applicant must have vested in him an indefeasible legal title. If Dingler had equitable title, or such right as would have entitled him to specific performance of the verbal contract between himself and Neeley, we think it clear that he would be an "owner" within the purview of the statute cited. Smith v. Rothe, 55 S. W. Rep., 754. Upon such right under our statute he could maintain or defend a suit in trespass to try title; so that, it seems to us, the vital question in this case is, whether the circumstances show that Dingler would have the right to enforce performance of the verbal contract. Ordinarily, in order to avoid the operation of the statute of frauds, requiring sales of lands to be evi-

denced by an instrument in writing, it is necessary for the purchaser to show the payment of the purchase money, in cases where purchase money is to be paid; that possession was delivered and that permanent and valuable improvements were made upon the faith of the verbal contract; and where the improvement placed upon the land by the purchaser is of inconsiderable or of no value, relief will be denied. Bradley v. Owsley, 74 Texas, 69; Ann Berta Lodge No. 42, I. O. O. F. v. Leverton, 42 Texas, 18; Eason v. Eason, 61 Texas, 225. But the jury in this case by their verdict, which has been approved by the trial court, has in effect declared that the improvements placed by Dingler upon his home tract were "permanent and valuable," the issue having been distinctly so submitted to the jury, and we feel unable to say that the evidence is insufficient to support the verdict.

The general principle upon which courts of equity proceed in decreeing specific performance of a parol sale of land is to grant such decree where the circumstances are such as not to do so would operate as a fraud upon the purchaser. In speaking of cases of this kind, it is said in the case of Wooldridge v. Hancock, 70 Texas, 22: "That every case of this class must stand on the special facts, and where it would be inequitable and fraudulent as against a person in possession, and especially where he can not be restored to his former condition, the vendor or donor will not be permitted to repudiate the contract." See, also, Baker's Executors v. De Freese, 2 Texas Civ. App., 527.

In the case before us it appears that the vendor Neeley at all times recognized at least the moral obligation resting upon him by reason of his contract, and the facts that Dingler went into possession, claimed the land as his own, paid interest upon the purchase money and made improvements not shown to be nonbeneficial or of inconsiderable value, when the small value of the land is considered, and upon the faith of his ownership applied for and assumed the obligations of the purchase of the land in controversy, seem to preclude Dingler's restoration to his former condition without injury. The fact that Neeley made deed direct to Bone and Gammons, and the fact that such purchasers made payment to the extent of $500 to Neeley rather than to Dingler, seem immaterial. The effect is precisely the same as if the conveyances had been made to Dingler and then by Dingler to his vendees, and Dingler in payment of his obligation to Neeley had paid Neeley the $500 he had agreed to pay. Ordinarily a stranger to the contract has no right to complain if the vendor in a parol sale of lands sees proper to fulfill a moral obligation to complete the contract. See Brown on Statute of Frauds, section 128; Gulf, C. & S. F. Ry. Co. v. Settegast, 79 Texas, 256. And the condition of Dingler's title is a condition of which appellant has no right to complain, except insofar as it was his right to show that the award to Dingler was unauthorized because Dingler was not the owner of adjoining land.

As a whole we conclude that the judgment should be in all things affirmed, other assignments being deemed immaterial.

Judgment affirmed.

*Affirmed.*

Writ of error refused.