EDWARDS v. OLD SETTLERS' ASS'N.
(No. 5318.)

(Court of Civil Appeals of Texas. Austin.
March 25, 1914. Rehearing Denied
April 29, 1914.)

1. FRAUDS, STATUTE OF (§ 149*)—INTEREST IN
LAND—LEASE.

In a lessee's action to enjoin interference
with its exclusive and quiet enjoyment of the
premises, allegations of payment to the lessor
according to contract, delivery of possession,
and permanent and valuable improvements were
all that was necessary to take the verbal lease
out of the statute of frauds.

[Ed. Note.—For other cases, see Frauds, Stat-
ute of, Cent. Dig. § 359; Dec. Dig. § 149.*]

2. MONOPOLIES (§ 12*)—CONSPIRACIES AGAINST
TRADE—AGREEMENT IN LEASE.

A lessor's agreement that he would not
allow any cold drink stands, shows, exhibitions,
dance halls, or platforms on the land he owned
within 400 yards of the leased land, or allow
any use of such contiguous land antagonistic to
the lessee's purpose and welfare, did not violate
Rev. St. 1911, arts. 7796–7809, defining and
prohibiting trusts, monopolies, and conspiracies
against trade.

[Ed. Note.—For other cases, see Monopolies,
Cent. Dig. § 10; Dec. Dig. § 12.*]

3. ASSOCIATIONS (§ 15*)—LEASEHOLD PROPER-
TY—RIGHTS OF MEMBERS.

A lease to an unincorporated association
which could not own a leasehold estate would
not, for that reason, fail for want of a grantee,
as the title would vest in its members.

[Ed. Note.—For other cases, see Associations,
Cent. Dig. §§ 19–25; Dec. Dig. § 15.*]

4. FRAUDS, STATUTE OF (§ 129*) — VERBAL
LEASE—IMPROVEMENTS.

Under the rule that, to take a verbal lease
out of the statute of frauds, the improvements
relied upon by the lessee must have been made
during the lifetime of the lessor, improvements
by an unincorporated association under a ver-
bal lease made February, 1911, by beginning
of work on a dam and a tabernacle, and on a
spring, within a few months, and before lessor
died, were sufficient, even though no part of
such improvements was completed during the
lifetime of the lessor.

[Ed. Note.—For other cases, see Frauds, Stat-
ute of, Cent. Dig. §§ 287–292, 303, 306–308,
311, 314, 318–320, 322, 325, 326; Dec. Dig. §
129.*]

5. FRAUDS, STATUTE OF (§ 144*) — VERBAL
LEASE—RATIFICATION.

Where a landowner made a verbal lease
and died before the lessee made the agreed im-
provements required to take the contract out
of the statute of frauds, his widow, by permit-
ting permanent and valuable improvements to
be completed, and accepting the fixed annual
rent for two years, and selling other land sub-
ject to such lease, thereby ratified such verbal
lease, and made it binding upon herself.

[Ed. Note.—For other cases, see Frauds, Stat-
ute of, Cent. Dig. § 351; Dec. Dig. § 144.*]

6. FRAUDS, STATUTE OF (§ 125*)—EFFECT—
CONTRACT.

A contract is not unlawful because not in
compliance with the statute of frauds, as the
statute presupposes its legality, the enforcement
of which is only suspended until the provisions
of the statute are satisfied.

[Ed. Note.—For other cases, see Frauds, Stat-
ute of, Cent. Dig. §§ 275–277½; Dec. Dig. §
125.*]

7. FRAUDS, STATUTE OF (§ 152*)—CONTRACT—
PLEADING—DEFENSE.

The statute of frauds must be pleaded when
relied upon to defeat a contract.

[Ed. Note.—For other cases, see Frauds, Stat-
ute of, Cent. Dig. §§ 363–366, 371, 372; Dec.
Dig. § 152.*]

8. ASSOCIATIONS (§ 24*) — INCORPORATION OF
ASSOCIATION—PROPERTY.

While the incorporation of a voluntary as-
sociation does not of itself constitute the cor-
poration the owner of the association's proper-
ty, yet, when such property is paid for with
money derived from the sale of stock in, and
is held in trust for, the contemplated corpora-
tion, delivery of possession to it when formed
vests it with at least the equitable title to the
property.

[Ed. Note.—For other cases, see Associations,
Cent. Dig. § 45; Dec. Dig. § 24.*]

9. FRAUDS, STATUTE OF (§ 158*)—ORAL LEASE
—PART PERFORMANCE—SUFFICIENCY.

Where an oral lease was made under which
the lessee went into possession and made val-
uable improvements, the fact that it was agreed
that the lease should be reduced to writing does
not conclusively show that the improvements
were made on the faith of the promised written
lease, and not on the strength of the oral one.

[Ed. Note.—For other cases, see Frauds, Stat-
ute of, Cent. Dig. §§ 373–376; Dec. Dig. §
158.*]

10. EVIDENCE (§ 165*) — PAROL EVIDENCE —
CONTRACT.

When the terms of an agreement are re-
duced to writing and signed by the parties, the
writing is merely the evidence by which the
contract can be proved, and, in the absence of
fraud, accident, or mistake, is the best evidence.

[Ed. Note.—For other cases, see Evidence,
Cent. Dig. §§ 548–555; Dec. Dig. § 165.*]

11. EVIDENCE (§ 121*)—ADMISSIBILITY — RES
GESTÆ.

In a lessee's action for an injunction, state-
ments of the lessor as to leasing the premises
and delivering possession in so far as res gestæ
as to delivery of possession were admissible.

[Ed. Note.—For other cases, see Evidence,
Cent. Dig. §§ 303, 307–338, 1117, 1119; Dec.
Dig. § 121.*]

12. EVIDENCE (§ 229*)—HEARSAY—DECLARA-
TIONS AGAINST INTEREST.

In such case the lessor's declarations
against interest were admissible against defend-
ant, who claimed under him with full notice
that plaintiff was in possession claiming under
a lease.

[Ed. Note.—For other cases, see Evidence,
Cent. Dig. §§ 822–834; Dec. Dig. § 229.*]

13. WITNESSES (§ 163*) — DECLARATIONS OF
DECEDENT.

Such declarations were not objectionable
as the declarations of a deceased party, where
the suit was not against the heirs or executors
of the lessor, and where neither of the witness-
es were parties thereto.

[Ed. Note.—For other cases, see Witnesses,
Cent. Dig. § 670; Dec. Dig. § 163.*]

14. EVIDENCE (§ 157*)—BEST AND SECONDARY
EVIDENCE—CONTRACT.

A promise to execute a written lease, which
lease was drawn and delivered to the lessor,
who promised to sign it, but who did not do so,
was not the best evidence of the terms of a pre-
vious verbal lease, followed by delivery of pos-
session, payment of rent, and permanent im-
provements.

[Ed. Note.—For other cases, see Evidence,
Cent. Dig. §§ 460–470; Dec. Dig. § 157.*]

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

**15. WITNESSES (§ 255*) — CONTRACT — MEMORANDUM TO REFRESH MEMORY.**

In such case it was permissible for the draftsman to use it as a memorandum to refresh his memory.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 874–890; Dec. Dig. § 255.*]

**16. FRAUDS, STATUTE OF (§ 129*)—VERBAL LEASE—IMPROVEMENTS.**

In considering improvements which would take a verbal lease with delivery of possession out of the statute, a dam for the construction of which the lessee had agreed to pay a part, and which, though not on the land leased, created a lake thereon, used for irrigation purposes, and a valuable and permanent improvement, was properly included.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 287–292, 303, 306–308, 311, 314, 318–320, 322, 325, 326; Dec. Dig. § 129.*]

Appeal from District Court, Williamson County; C. A. Wilcox, Judge.

Action for injunction by the Old Settlers' Association against W. W. Edwards. Judgment for plaintiff, and defendant appeals. Affirmed.

Lightfoot, Brady & Robertson, of Austin, for appellant. John D. Hudson, Richard Critz, Sansom & Metcalfe, and Wilcox & Graves, all of Georgetown, for appellee.

### Findings of Fact.

JENKINS, J. We adopt the following findings of fact made by the trial judge herein:

"I find that the plaintiff is a corporation duly incorporated under and by virtue of the laws of the state of Texas, and that the defendant resides in Williamson county, Tex.

"I find further that about the 3d day of February, 1911, one G. W. Glasscock, now deceased, made and entered into a verbal contract with F. W. Carothers and W. K. Makemson, and also with the Old Settlers' Association of Williamson county, Tex., then unincorporated, by the terms of which contract the said G. W. Glasscock agreed to and did lease to the said Carothers and Makemson, and to the Old Settlers' Association, unincorporated, the following described tract of land:

"Lying and being situated in Williamson county, Tex., beginning at the north bank of the San Gabriel river, at a stake from which a water elm bears S. 60 E. 18 feet; thence N. 30 W. with the general line of a fence 525 feet to corner; thence S. 61 W. with a fence line 220 feet; thence S. 54 W. with fence line 1,217 feet; thence S. 37½ W. 233 feet to a fence; thence S. 32 E. with a fence line 360 feet to a stake; thence S. 55½ W. with fence line to a point 13 feet S. of the N. line of the street in North Georgetown; thence S. 400 feet to a stake; thence S. 35 feet to a large rock in the south edge of the north San Gabriel river; thence down said south edge of said North San Gabriel river to its junction with the South San Gabriel river; thence with the south bank of the San Gabriel river to a point opposite the mouth of Glasscock's old millrace; thence across said stream at a right angle to a point on the north bank of said stream; thence up the north bank of said stream to the place of beginning; and containing 33 acres of land, more or less, and being what is known as the Old Settlers' Grounds near the city of Georgetown, in Williamson county, Tex., and that in addition to said lease that said lease included a right of way from the north end of the causeway just north of the above-described premises, across said river, said right of way leading from the north end of said causeway along the north bank of said river so as to lead into the above-described 33-acre tract of leased land.

"I find that by the terms of said lease it was agreed that about said above-named date that the said Glasscock should receive annual rental for the said premises of $150 per year, due and payable on the 1st day of January, at the close of each year, and that the said Glasscock reserved the right to gather all pecans for his own use on said premises, and further that he reserved the right to get sand and gravel on said premises, and fill all excavations where such sand and gravel is taken, and water for irrigation, domestic, and stock purposes; and I find, further, that the said Glasscock owned the surrounding lands contiguous to said tract, afterwards sold to the defendant herein, and that he agreed as a part of the consideration for said lease, that he would not allow any cold drink stands, shows, exhibitions, dance halls, or platforms on the land he owned within 400 yards of the above-leased land, or allow the use of said contiguous land within 400 yards of said premises for any purpose or pursuit that would come into competition with or antagonize the purpose and welfare of the said Old Settlers' Association.

"I also find that it was agreed by and between the said G. W. Glasscock and the said Carothers and Makemson and the said Old Settlers' Association, then unincorporated, that the said Old Settlers' Association should thereafter be incorporated under and by virtue of the laws of the state of Texas, and that said lease above named was made for the use and benefit of said Old Settlers' Association, then unincorporated, and that the agreement or contract between the said Glasscock and the said Carothers and Makemson and the said Old Settlers' Association, unincorporated, was that said Old Settlers' Association should thereafter be incorporated, and that said lease was made for the use and benefit of said Old Settlers' Association, unincorporated, at that time, and that, when said Old Settlers' Association should be incorporated, that said corporation should be the owner of said lease, and should be subrogated to all the rights and equities then owned or held by the said Carothers

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

and Makemson and the said Old Settlers' Association, unincorporated, and each and all of them, that said lease was to begin on the 3d day of February, 1911, and was to continue for and during a period of 15 years from said date; and it was also agreed that said lease was to carry with it the right of exclusive possession, use, and control in the plaintiff herein and the Old Settlers' Association, unincorporated, and also the right of exclusive use and control during all of said lease, subject to the foregoing exceptions.

"I further find that it was agreed, as a part of the consideration for the making of the said lease above named, that the said Old Settlers' Association should build a tabernacle, and in connection with Williamson county, build a dam or causeway across said river so as to make a lake of water within the boundaries of said leased land, and said causeway to also be used as a public roadway; and it was also agreed that certain improvements were to be made to the springs on said land, and such other improvements as should be necessary for the use and occupancy of said land by said Old Settlers' Association.

"I further find that, in pursuance of said agreement, the said G. W. Glasscock did deliver actual and open possession and control of said premises to said Old Settlers' Association of Williamson county, then unincorporated, and that, in pursuance of said agreement, the said Old Settlers' Association remained in such possession and control until it was duly and legally incorporated under the laws of this state on the 3d day of May, 1912, for the purpose of education, etc., and that upon its incorporation said actual, open, and exclusive possession of said premises vested and continued in said corporation, that said corporation was subrogated to all the rights, privileges, and equities theretofore owned or held by said Carothers and Makemson and the Old Settlers' Association of Williamson county, unincorporated, and that it has since said date been in open, exclusive possession of said premises under said lease.

"I further find that, after entering into said lease, the said G. W. Glasscock died, and that, in the partition and division of said estate of the said G. W. Glasscock, the above-named premises were awarded to and set apart to his widow, Mrs. Helen Glasscock, and that on or about the 5th day of August, 1911, the said Mrs. Helen Glasscock, the then owner of said premises, accepted the first year's lease money on said premises, to wit, $150, and that on or about the 2d day of August, 1912, she accepted the second year's lease money, $150, and I find that said money was paid to and accepted by the said Mrs. Helen Glasscock under and by virtue of said verbal or parol contract with the said G. W. Glasscock above named, and that the said Mrs. Helen Glasscock at all times while she owned said land recognized said contract and said lease.

"I further find that, after above-named contract was made, subscription lists were circulated for stock of plaintiff, and that the said G. W. Glasscock assisted in the circulation of said lists, and solicited subscriptions for stock, and assisted in the raising of said stock subscriptions, and that several thousand dollars were raised on said stock subscriptions; and I further find that this plaintiff and its predecessor, the Old Settlers' Association, unincorporated, in consideration of said 15-year contract and lease, made valuable improvements on said land in the shape of a large tabernacle, of the value and cost of about $1,500, that they paid out about $900 in the building of said causeway, and several hundred dollars in other permanent improvements on said premises, aggregating about $3,000. I further find that the said G. W. Glasscock assisted in letting the contract for said tabernacle and causeway, and that they were nearly completed at the time of his death, and were in all things built according to contract; and I further find that under the terms of said contract of lease said improvements were to be made as part of the consideration of said lease, and were and are to be the property of the said Glasscock, his heirs and assigns, at the end of said lease; and I further find that the said improvements were made in good faith, relying on said lease, and acting strictly within the terms thereof.

"I further find that said improvements were all paid for out of the proceeds of the sale of the stock of this plaintiff corporation, and that therefore they were all paid for by this plaintiff. I further find that they are valuable and permanent improvements, and were started and nearly completed during the lifetime of the said G. W. Glasscock, with his full knowledge, consent, and approval, and erected in good faith, acting under and by virtue of the terms of said lease. I further find that they were completed with the full knowledge and consent of the said Mrs. Helen Glasscock.

"I further find that all the aforesaid payments of lease money so made by the plaintiff and its predecessor, and the improvements so placed on said premises by this plaintiff and its predecessors, were paid for and placed thereon in good faith, acting under and relying on said verbal or oral lease above named.

"I further find that after the death of the said G. W. Glasscock, and after the making of said improvements and the payment of said lease money, as above set out, that the said Mrs. Helen Glasscock conveyed the above land and the land surrounding the same then owned by her to W. W. Edwards, the defendant herein, this plaintiff at that time being in full, actual, and notorious possession and control of said 33 acres of land, leased as aforesaid,

at the time of said conveyance; and I further find that the defendant Edwards bought said land with both actual and constructive knowledge of the lease rights of this plaintiff at the time of said conveyance, and long before he purchased or contracted to purchase said land as aforesaid, and that at the time he made said contract he was told by the said Mrs. Helen Glasscock about said lease, and it was expressly understood by him that he purchased said land subject to the rights of this plaintiff under said lease.

"I further find that the plaintiff herein, under the terms of said lease, is entitled· to use all dead timber for the use of campers on said premises.

"I further find that at the time of the institution of this suit, and at the time of the trial of this cause, that the defendant was disputing the lease rights of this plaintiff, and was disturbing it in its rights of exclusive possession and control of said premises, and was turning stock therein, and had torn down some of its fences, gates, and other improvements; and I further find that the purposes of this corporation are not those of profit, but education, as above set out.

· "I further find that temporary injunction has heretofore been issued in the terms as set out in the judgment herein, and that said temporary injunction was necessary for the proper preservation of plaintiff's rights."

There was a judgment for appellee, and the temporary injunction was made perpetual.

### Opinion.

[1] The court did not err in overruling appellant's general demurrer. The appellee alleged substantially the facts found by the trial court as above set out. These facts are all that is necessary to take a verbal lease out of the statute of frauds, under the decisions of this state, viz.: Payment according to contract, delivery of possession, and permanent valuable improvements. Wallis v. Turner, 95 S. W. 63; Lechenger v. Bank, 96 S. W. 640; Bradley v. Owsley, 74 Tex. 71, 11 S. W. 1052; Hutcheson v. Chandler, 47 Tex. Civ. App. 124, 104 S. W. 434; Dixon v. McNeese, 152 S. W. 676; Anderson v. Anderson, 13 Tex. Civ. App. 527, 36 S. W. 817; Wanhscaffe v. Pontoja, 63 S. W. 663.

The allegations as to the delivery of possession by Glasscock to the Old Settlers' Association, unincorporated, and the delivery of possession by said association to the appellee, are not as specific as they might have been; but we think they are sufficient as against a general demurrer, especially in view of the fact that the evidence fully substantiates these allegations, and there is no pretense that appellant was surprised by such evidence, or suffered any injury by reason of the vagueness of such allegations.

The special exception set out in the second assignment of error is in effect a general exception to the petition in so far as it relates to the statute of frauds, and the same was properly overruled.

[2] The third assignment of error is to the effect that the alleged contract was void as being contrary to chapter 1 of title 130, R. S. 1911, defining and prohibiting trusts, monopolies, and conspiracies against trade. We overrule this assignment upon the authority of Nickels v. Prewitt, 149 S. W. 1096, Malakoff v. Riddlesperger, 133 S. W. 519, and Forrest Photo Co. v. Hutchinson, 108 S. W. 768. The part of the petition to which this exception was directed is as follows: "He [the lessor] further agreed that he would not allow any cold drink stands on his land within 400 yards of said land so leased, for cold drink stands, shows, exhibitions, dance halls, or platforms, or for any purpose or pursuit that may come in competition with or antagonize the purpose and welfare of the said Old Settlers' Association, as hereinbefore and hereafter alleged."

[3] It is true, as contended by appellant, that the unincorporated association, as such, could not become the owner of a leasehold estate; but the grant would not, for that reason, fail for the want of a grantee, as the title, where the grant is made to an unincorporated association, vests in its members. Smith v. Bank, 43 Tex. Civ. App. 495, 95 S. W. 1116. But, under the terms of the verbal lease herein, the unincorporated association, or its members, held the lease in trust for the corporation which was thereafter to be formed, and which was formed. It has discharged that trust by delivering possession of the leased premises to the incorporated association, and neither it nor any of its members are objecting to the title of appellee.

[4] It is true, as a general rule, that the improvements relied upon must have been made during the lifetime of the grantor. Ryan v. Wilson, 56 Tex. 36; Baldwin v. Riley, 49 Tex. Civ. App. 557, 108 S. W. 1192; Altgelt v. Escalera, 51 Tex. Civ. App. 108, 110 S. W. 991; Hammond v. Hammond, 49 Tex. Civ. App. 482, 108 S. W. 1025; Newcomb v. Cox, 27 Tex. Civ. App. 583, 66 S. W. 340. Giving this rule its full force, the improvements made during the lifetime of Judge Glasscock were sufficient. The dam for which appellee paid as its part $900 and the tabernacle which cost $1,410.18, and the work on the spring which cost $180 were begun, and a great part of the work on them was done, before Judge Glasscock died. In this case the appellee, with the knowledge and consent of Judge Glasscock, had become legally liable for $900 for work on the dam, and for the cost of constructing the tabernacle during his lifetime, and we think this is sufficient to meet the demand for improvements, even though no part of said improvements had been made during the lifetime of the grantor. The rule announced in the cases above cited is correct as applied to the facts of those cases; but every case where the statute of frauds is invoked must stand

upon its own equities. Wells v. Davis, 77 Tex. 639, 14 S. W. 237; Altgelt v. Escalera, supra; Morris v. Gaines, 82 Tex. 258, 17 S. W. 538; Bone v. Cowan, 37 Tex. Civ. App. 519, 84 S. W. 386.

[5-7] However, if no work had been done, and no legal liability therefor incurred, during the lifetime of Judge Glasscock, we think the judgment should nevertheless be affirmed. In such case Mrs. Glasscock would have taken the title held by her deceased husband, and might have repudiated the lease contract, as he might have done, prior to improvements being placed on the land, or legal liability therefor incurred; but she might also have ratified said contract and thereby make it binding upon her. This she did by permitting the work to be finished as specified in the contract, which added permanent and valuable improvements to her land, and by accepting the annual rent for two years. She is not denying the validity of the contract; but, if she was doing so, she would be estopped by her conduct. Appellant purchased the tract of land which includes the leased premises with full knowledge of all of the facts, and with the express understanding that he did so subject to the lease, and he is in no better position to deny the validity of the lease than Mrs. Glasscock would have been had she not sold the land.

A contract is not unlawful by reason of its not being in compliance with the statute of frauds. "The statute presupposes its legality, the enforcement of which is only suspended by the statute until its provisions are satisfied." Bringhurst v. Texas Co., 39 Tex. Civ. App. 500, 87 S. W. 896. The statute of frauds' must be pleaded when relied upon to defeat a contract. Patton v. Rucker, 29 Tex. 411; Texas Brewing Co. v. Walters, 43 S. W. 548; Garner v. Stubblefield, 5 Tex. 561. It cannot be effectually interposed by a party who is estopped from availing himself of its benefits. The maintenance of a parol contract required by the statute of frauds to be in writing rests upon the broad grounds of equitable estoppel. Bringhurst v. Texas Co., supra, 39 Tex. Civ. App. 500, 87 S. W. 893; Lechenger v. Bank, 96 S. W. 640. The equities in this case are sufficient to estop appellant from asserting the invalidity of the contract.

[8] Appellant insists that the judgment should be reversed for the reason that there was no transfer from the Old Settlers' Association, unincorporated, nor from Carothers or Makemson, as trustees for said association, to the Old Settlers' Association, incorporated. There was delivery of possession, and this is all that was necessary. This is not a suit of trespass to try title, in which appellee could be defeated by showing a superior outstanding title in a third party, but a suit for the enforcement of a contract originally made for the benefit of appellee, which is resisted on the ground that it was not in compliance with the statute of frauds. Neither the Old Settlers' Association, unincorporated, nor any of its members, nor Carothers or Makemson, are denying the title of appellee, and appellant does not connect himself with any title or equities that any of said parties might have by reason of their failure to make a written transfer to appellee. It is true that the incorporation of a voluntary association does not of itself constitute the incorporation the owner of the property owned by the unincorporated association (McLeary v. Dawson, 87 Tex. 537, 29 S. W. 1044; Carothers v. Alexander, 74 Tex. 319, 12 S. W. 4); but, when the property is paid for with money derived from the sale of stock in the corporation to be formed, and is held in trust for such contemplated incorporation, as in the instant case, delivery of possession to such incorporation when formed vests it with at least the equitable title to the property.

[9, 10] Appellant insists that the evidence shows that the improvements were not made under a verbal lease, but upon the faith of Judge Glasscock's promise to make a written lease. It is true that Judge Glasscock promised to execute a written lease, and that Col. Makemson reduced the same to writing and delivered it to Judge Glasscock, who promised to sign same, and doubtless intended but neglected to do so. But this does not contradict the testimony that he had made a verbal lease and delivered possession thereunder. "Where the parties meet and discuss the proposed transaction, and it is consummated while they are together, then, in the nature of things, an oral agreement precedes the writing; the latter being the best evidence of the former." Bringhurst v. Texas Co., 39 Tex. Civ. App. 500, 87 S. W. 896. We are accustomed to speak of "written contracts"; but, accurately speaking, there is no such thing as a written contract. A contract is an agreement, a meeting of the minds of the parties, and, when the terms of the agreement are reduced to writing and signed by the parties, the writing is simply the evidence by which the contract can be proven. In the absence of fraud, accident, or mistake, it is made by law the best evidence. But, when parties have made a contract, the agreement to thereafter reduce the same to writing does not abrogate the oral contract made. Where there was a parol gift of land, and a promise to make a deed to the same, it was held, in Wells v. Davis, 77 Tex. 637, 14 S. W. 237, that improvements placed upon the land in reliance on such promise was sufficient to take the case out of the statute of frauds.

[11] Error is assigned upon permitting several witnesses to testify to the statements of Judge Glasscock as to leasing the property, and delivering possession thereof. Some of these declarations were res gestæ of the delivery of possession, and were admissible for that reason.

[12] They were not hearsay. They would have been admissible against Glasscock as admissions and declarations against his interest, and were admissible against appellant, who claimed under him with full notice that appellee was in possession, claiming under a lease from Glasscock. Hancock v. Tram Co., 65 Tex. 233.

[13] They were not objectionable as the declaration of a deceased party. This was not a suit by or against the heirs, executors, or administrators of Glasscock, and neither of the witnesses were parties to this suit. Wootters v. Hale, 83 Tex. 564, 19 S. W. 134; McBride v. Moore, 37 S. W. 451.

[14, 15] There is no merit in the contention that the written contract was the best evidence of the terms of the lease. It was not signed. It was permissible for Col. Makemson, who drew the same, to use it as a memorandum to refresh his memory. It was afterwards introduced by appellant, and there was no material variance between it and Col. Makemson's testimony.

[16] Appellant insists that the evidence as to the dam should not have been admitted for the reason that it was not built on the leased premises. It is true that it is not within the boundaries of the land surveyed by Glasscock and described in the lease drawn up by Col. Makemson which Judge Glasscock promised to sign; but it was a part of the verbal agreement to lease that the association should pay a part of the cost of constructing said dam; the county of Williamson paying the remainder, and using the dam for a public road crossing. It was so stipulated in said written but unsigned lease. Judge Glasscock pointed out the place where the dam should be built. Though the dam was not on the land leased, it created a lake on said property, which the lessor was to be permitted to use for irrigation purposes, and said lake was a valuable and permanent improvement on said property. Such being the fact, it is immaterial that the dam itself was not on the leased premises.

Finding no error of record, the judgment of the trial court is affirmed.

Affirmed.

KEY, C. J., not sitting.